UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MARIO PITTMAN,

                              Petitioner,

    -vs-

P. ZHAPPIU,

                              Respondent.

**No. 6:15-cv-06293-MAT**
**DECISION AND ORDER**

---

**INTRODUCTION**

Proceeding pro se, Mario Pittman ("Petitioner") has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. 2254 alleging that he is unconstitutionally incarcerated in Respondent's custody pursuant to a judgment entered November 23, 2010, in New York State Supreme Court, Erie County (Kloch, A.J.), following a jury trial at which he was convicted of first-degree attempted murder (N.Y. Penal Law §§ 110.00, 125.27(1)(a)(i); (b)) second-degree criminal possession of a weapon (id., § 265.03(former (2))); and third-degree criminal possession of a weapon (id., § 265.02(1)). Petitioner is presently serving his sentence.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Under Erie County Indictment No. 00887-2005, Petitioner was charged with first-degree attempted murder (P.L. §§ 110.00, 125.27(1)(a)(i)), two counts of second-degree attempted

(intentional) murder (id., §§ 110.00, 125.25(1)), second-degree criminal possession of a weapon (id., § 265.03(former (2))), and third-degree criminal possession of a weapon (id., § 265.02(1)). The charges stemmed from an incident on April 7, 2005, in which Petitioner allegedly attempted to fatally shoot Buffalo Police Department Officers Thomas English ("English") and Gregory Braswell ("Braswell") with a revolver. Petitioner was tried before a jury in New York State Erie County Court (Amico, J.). He was acquitted of second-degree attempted murder with regard to Braswell but convicted of the remaining counts.

On March 14, 2008, the Appellate Division, Fourth Department, of New York State Supreme Court ("the Fourth Department") reversed the judgment of conviction on the law and granted a new trial. In a 4-1 decision, the Fourth Department found that the trial court "erred in permitting the People to present evidence concerning his conviction of attempted criminal possession of a weapon in the second degree arising from a 1998 incident in which defendant attempted to shoot a police officer." People v. Pittman, 49 A.D.3d 1166, 1167, 854 N.Y.S.2d 623, 624 (4th Dep't 2008). Finding that the potential for prejudice outweighed the probative value of that evidence, the majority found the evidentiary error not harmless and reversed Petitioner's conviction.

Petitioner proceeded to a re-trial before Associate Justice Richard Kloch, Sr. in Erie County Supreme Court. As noted above,

the jury returned a verdict convicting Petitioner of first-degree attempted murder and related weapons-possession charges. He was sentenced as a persistent violent felony offender to four consecutive indeterminate terms of imprisonment with the maximum term of life and the minimum term of twenty-five years.

On direct appeal, Petitioner's appellate counsel raised the following grounds for reversal: the trial court's erroneously refused to hold a competency hearing; the trial court erred in denying two for-cause challenges by defense counsel during jury selection; the trial court erred in admitting testimony by one of the victims, Braswell; the verdict was against the weight of the credible evidence and not supported by legally sufficient evidence; Petitioner was excluded from a material stage of the trial; the prosecutor committed misconduct; and the sentence was harsh and excessive. By an order dated September 27, 2013, the Fourth Department unanimously affirmed the conviction. People v. Pittman, 109 A.D.3d 1080, 91 N.Y.S.2d 600 (4th Dep't 2013). The New York Court of Appeals denied leave to appeal on December 30, 2013. People v. Pittman, 22 N.Y.3d 1043 (2013).

Petitioner then filed the instant habeas petition on June 29, 2015. Respondent answered the petition. Petitioner did not file a traverse.

For the reasons discussed below, the petition is dismissed.

**DISCUSSION**

**I.   The Petition is Untimely**

Petitioner's petition post-dates the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which sets forth a one-year limitations period for filing habeas petitions. The start-date of the limitations period can vary but in most cases–including this one–the period commences after the prisoner's state conviction becomes final. Thus, the conviction became final on the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review, pursuant to 28 U.S.C. § 2244(d)(1)(A).

Where, as here, the prisoner has actually appealed the conviction, the limitations period begins to run after the expiration of the ninety-day period within which a petition for a writ of certiorari may be filed in the United States Supreme Court, even if such a petition is not actually filed. See 28 U.S.C. § 2244(d)(1)(A); Clay v. United States, 537 U.S. 522, 525 (2003) ("[A] judgment of conviction becomes final when the time expires for filing a petition for certiorari contesting the appellate court's affirmation of the conviction.").

As noted above, the New York Court of Appeals denied permission to appeal on December 30, 2013. Petitioner thereafter had ninety (90) days in which to file a petition seeking a writ of certiorari in the United States Supreme Court. See Sup. Ct. R. 13(1) ("A petition for a writ of certiorari seeking review of a

judgment of a lower state court that is subject to discretionary review by the state court of last resort is timely when it is filed with the Clerk within 90 days after entry of the order denying discretionary review."). Because Petitioner did not file a petition for <u>certiorari</u> seeking review of the New York state-court decisions in the United States Supreme Court, his conviction became final on Monday, March 31, 2014.[1]

Petitioner then had one year from that date, or until March 31, 2015, to file his federal habeas petition and have it be found timely. <u>See</u> 28 U.S.C. 2244(d)(1)(A). The petition, deemed to have been filed on June 29, 2015,[2] when Petitioner signed it, was filed 90 days after the one-year limitations period expired. Therefore, it is untimely.

## II. Petitioner Is Not Entitled to Statutory or Equitable Tolling

### A. Statutory Tolling

AEDPA contains a tolling provision which provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the

---

[1] Ninety days after December 30, 2013, fell on Sunday, March 30, 2014, but, by operation of law, the due date for Petitioner to file his petition is deemed to be the next business day, Monday, March 31, 2014. <u>See</u> Fed. R. Civ. P. 6(a)(1)(C).

[2] By operation of the "prison mailbox rule," the petition is deemed to have been filed on the date that Petitioner signed it. <u>See</u> <u>Houston v. Lack</u>, 487 U.S. 266, 276 (1988) (stating that the "prison mailbox rule" applies to <u>pro</u> <u>se</u> incarcerated petitioners and provides that a pleading is deemed filed on the day the petitioner hands it over to prison officials for mailing).

-5-

pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2); see also, e.g., Smith v. McGinnis, 208 F.3d at 16.

On the form habeas petition, where it asks, "[o]ther than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions (e.g. a petition under NY CPL§ 440, a state habeas petition, or a previous petition under 28 U.S.C. 2254) with respect to this judgment in any court, state or federal[,]" Petitioner checked the "No" box. (See Petition ("Pet.") (Dkt #1), ¶ 14). Because Petitioner never filed applications for State post-conviction or other collateral review, he cannot avail himself of the statutory tolling allowed for in 28 U.S.C. § 2244(d)(2).

**B. Equitable Tolling**

The Second Circuit and the Supreme Court have found that because AEDPA's one-year time-bar is a statute of limitations rather than a jurisdictional bar, it may be equitably tolled. See Holland v. Florida, 560 U.S. 631, 645 (2010) (confirming that AEDPA's statute of limitations is not jurisdictional and "does not set forth an inflexible rule requiring dismissal whenever its clock has run") (internal quotation marks omitted); Smith v. McGinnis, 208 F.3d 13, 16 (2d Cir. 2000). However, equitable tolling is available only in the "rare and exceptional circumstances," namely, when "extraordinary circumstances prevented [the petitioner] from

filing his petition on time." Smith, 208 F.3d at 17. Thus, in order to benefit from equitable tolling, a petitioner must establish "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." Harper v. Ercole, 648 F.3d 132, 136 (2d Cir. 2011) (quoting Holland, 560 U.S. at 649 (internal quotation marks omitted)).

The Second Circuit "has seldom found extraordinary circumstances sufficient to warrant equitable tolling," Atkins v. Warden, 585 F. Supp.2d 286, 296 (D. Conn. 2008), aff'd, 354 F. App'x 564 (2d Cir. 2009), and has "set a high bar to deem circumstances sufficiently 'extraordinary' to warrant equitable tolling." Dillon v. Conway, 642 F.3d 358, 363 (2d Cir. 2011). Indeed, the term "extraordinary" does not refer to whether the claimed obstacle is merely out of the ordinary or unusual, but rather to "'how severe an obstacle it is for the prisoner endeavoring to comply with AEDPA's limitations period.'" Bolarinwa v. Williams, 593 F.3d 226, 231–32 (2d Cir. 2010) (quoting Diaz v. Kelly, 515 F.3d 149, 154 (2d Cir. 2008)).

On the form petition, Petitioner was asked, "[i]f you did not appeal from the adverse action on any petition, application, or motion, explain briefly why you did not." Petitioner stated that this was his "first petition" and "furthermore, [he] just learn about Supreme Court[.]" (Pet., ¶ 21). It is well established that

lack of legal representation or ignorance of the law alone cannot constitute an extraordinary circumstance that tolls the AEDPA's one-year statute of limitations. See, e.g., Doe v. Menefee, 391 F.3d 147, 175 (2d Cir. 2004) (noting that "pro se status does not . . . merit equitable tolling" of AEDPA's statute of limitations) (citing Smith, 208 F.3d at 18)); Ormiston v. Nelson, 117 F.3d 69, 72 n. 5 (2d Cir. 1997) ("Mere ignorance of the law is, of course, insufficient to delay the accrual of the statute of limitations."). On the record before the Court, there is no suggestion of circumstances "sufficiently 'extraordinary' to warrant equitable tolling," Dillon, 642 F.3d at 363, and the Court finds that Petitioner cannot avail himself of this doctrine.

In short, Petitioner's petition must be dismissed as untimely.

**III. The Petitioner's Claims Are Unexhausted But Must Be Deemed Exhausted and Procedurally Defaulted.**

The grounds identified by Petitioner are somewhat difficult to discern, but it appears that he is asserting the following claims: (1) he was actually the victim of a shooting on April 7, 2005, and he was "falsely arrested when [he] approached police after running from gun men" (Pet., ¶ 22(A)); (2) defense counsel failed to move to suppress his statement to police (Pet., ¶ 22(B)); (3) the prosecutor failed to produce the results of gun powder residue testing that would have proved he did not shoot a gun on the night of the "false arrest) (Pet., ¶ 22(C)); (4) he was "never supposed

to get indicted [by the grand jury] because the gun didn't belong to [him] (Pet., ¶ 22(D)). All of these claims are unexhausted because, as Petitioner admits in the petition, he has never fairly presented them in Federal constitutional terms to the State courts in the course of completing one round of the State's established appellate review process. E.g., Baldwin v. Reese, 541 U.S. 27, 29 (2004) (describing exhaustion process that state prisoners must follow). However, the claims must be deemed exhausted because Petitioner no longer has available remedies in state court. E.g., Bossett v. Walker, 41 F.3d 825, 829 (2d Cir. 1994). First, he has already completed his direct appeal. By statute, New York law used to specifically provide for only a single application for direct review. Spence v. Sup't, Great Meadow Corr. Fac., 219 F.3d 162, 170 (2d Cir.2000) (relying on former New York Rules for the Court of Appeals ("N.Y. R. Ct.") § 500.10(a) (discussing leave applications for criminal appeals)). N.Y. R. Ct. § 500.10 has since been amended, and criminal leave applications are now addressed in N.Y. R. Ct. § 500.20. Although § 500.20 "does not specifically state that there may be only one application for appeal, see N.Y. R. Ct. § 500.20, such a restriction may be inferred," since "[b]oth Rule 500.20(d) and CPL § 460.10(5) provide a 30-day window for any such application to be filed; this time limit would be meaningless were multiple applications permitted." Colon v. Connell, No. 07 Civ. 7169(BSJ)(JCF), 2009 WL 2002036, at *6 n. 4 (S.D.N.Y. July 9, 2009)

(noting that both N.Y. R. Ct. § 500.20(d) and N.Y. Crim. Proc. Law § 460.10(5) provide a 30-day window for any such application to be filed; "this time limit would be meaningless were multiple applications permitted"); accord, e.g., Cunningham v. Conway, 717 F. Supp.2d 339, 365 (W.D.N.Y. 2010) (collecting cases). In addition, § 500.20(a)(2) provides that the leave letter must indicate that "that no application for the same relief has been addressed to a justice of the Appellate Division, as only one application is available[.]" N.Y. R. CT. § 500.20(a)(2).

Apart from a direct appeal, the only other way for Petitioner to exhaust his habeas claims would be to file a motion to vacate the judgment pursuant to New York Criminal Procedure Law ("C.P.L.") § 440.10. Because all of the claims are based on matters of record that could have been raised on direct appeal, collateral review by means of a such a motion is unavailable. See N.Y. Crim. Proc. Law § 440.10(2)(c) ("[T]he court must deny a motion to vacate a judgment when . . . Although sufficient facts appear on the record . . . such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal during the prescribed period or to his unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him. . . ."); see also Reyes v. Keane, 118 F.3d 136, 139-40 (2d Cir. 1997) ("Denial of a [C.P.L. §] 440.10 motion, pursuant to [C.P.L. §] 440.10(2)(c), will not always be appropriate in the

ineffective assistance context. However, Reyes's claim does not fall within any of the exceptions noted by the New York courts [because it was record-based]. . . . Reyes is therefore deemed to have exhausted his state remedies for the ineffective assistance claim by his procedural default on that issue.") (internal citation omitted).

The procedural rules that foreclose Petitioner's return to state court also render his habeas claims procedurally defaulted. "A habeas petitioner may bypass the independent and adequate state ground bar by demonstrating a constitutional violation that resulted in a fundamental miscarriage of justice, i.e., that he is actually innocent of the crime for which he has been convicted." Dunham v. Travis, 313 F.3d 724, 730 (2d Cir. 2002) (citing Schlup v. Delo, 513 U.S. 298, 321 (1995); other citation omitted).

In order to show "cause" for a default, a habeas petitioner must demonstrate that "some objective factor external to the defense" prevented the petitioner from presenting the claim. Coleman v. Thompson, 501 U.S. 722, 753 (1991). Ineffective assistance of counsel can constitute cause, but it must be true, constitutional ineffectiveness, and it must be a fully exhausted, non-procedurally defaulted claim. See Reyes v. Keane, 118 F.3d at 139-40. Petitioner here does not have a meritorious, fully exhausted, and non-defaulted claim of ineffective assistance of counsel to utilize as cause. It is immaterial whether prejudice

exists because Petitioner has failed to demonstrate cause. See, e.g., Stepney v. Lopes, 760 F.2d 40, 45 (2d Cir. 1985) ("[W]e need not, in light of our conclusion that there was no showing of cause, reach the question of whether or not [the petitioner] showed prejudice.").

Finally, for purposes of the miscarriage of justice exception, "'actual innocence' means factual innocence, not mere legal insufficiency." Bousley v. United States, 523 U.S. 614, 623 (1998). "To demonstrate 'actual innocence' a habeas petitioner 'must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence.'" Dunham, 313 F.3d at 730 (quoting Schlup, 513 U.S. at 327). Petitioner's conclusory protestations of innocence do not fulfill the heightened showing necessary to invoke the "fundamental miscarriage of justice" exception to the procedural default rule. Thus, the Court finds that all of Petitioner's habeas claims are subject to an unexcused procedural default.

In addition to being untimely, the petition contains only procedurally defaulted claims which may not be reviewed on the merits. Therefore, the petition properly may be dismissed on the basis of procedural default, as well.

## CONCLUSION

For the foregoing reasons, the petition is dismissed with prejudice. Because Petitioner has failed to make a substantial

showing of a denial of a constitutional right, see 28 U.S.C. § 2253(c)(2), no certificate of appealability shall issue. The Clerk of Court is directed to close this case.

**IT IS SO ORDERED.**

                                           **S/Michael A. Telesca**

                              _____
                                HON. MICHAEL A. TELESCA
                              United States District Judge

Dated:    November 17, 2017
            Rochester, New York.